sxb

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, <br><br> v. <br><br> LAMORRIS D. GIST, JR., <br><br> Defendant. | Case No. 19-CR-134 <br><br> Judge Charles R. Norgle |

## ORDER

Defendant's motion to quash arrest and suppress evidence [24] is denied.

## MEMORANDUM OPINION

Defendant Lamorris Gist has filed a motion to quash arrest and suppress evidence in relation to a vehicle traffic stop and subsequent search that took place on August 11, 2018. Defendant was a passenger in that car at the time of the stop and search. The search allegedly revealed that Defendant was carrying a plastic bag in his pocket with 30 .45 caliber rounds, one 9 mm round, and one .22 caliber round. Defendant was later indicted for a violation of Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a felon).

Defendant filed the instant motion on April 24, 2019, and it was fully briefed as of June 18, 2019. The Court has deferred ruling on the motion since that time to allow defense counsel to attempt to locate and serve a subpoena on the driver of the vehicle—Maurice House, who is also Defendant's stepbrother. Defendant has been unable to locate House.[1] For the following reasons,

---

[1] On August 5, 2019, defense counsel moved for the Court to appoint a private investigator to find Maurice House. In that motion, defense counsel stated that he had prepared a draft affidavit for House to review, correct, and execute once House had been located. In a hearing on that motion, counsel admitted that he had not spoken to House about the substance of the affidavit, stating instead that the alleged facts contained in the proposed affidavit stemmed from his review of the record and other independent investigation. The Court denied that motion but later granted a motion, on September 12, 2019, to appoint a private investigator to attempt to serve a subpoena on House. The Court has

1

the Court now denies the motion.

## I. Background

Defense counsel's and the Government's recounting of the relevant factual circumstances are largely consistent based on those facts presented to the Court that are specific, detailed, and nonconjectural. The only inconsistencies are immaterial to the determination of this motion (a point discussed further below).

On August 11, 2018, at approximately 9:45 p.m., Defendant was in the backseat of a grey Infiniti that was traveling on westbound I-90. Affidavit of Def., ¶ 4. The vehicle and its passengers were returning to Chicago from Indiana, where they had spent several days visiting the driver House's stepfather. Id. The car was pulled over by police, who indicated in reports that they had "paced" the car (that is, accelerated their car to the same speed as the target car and then checked the speedometer in the police car in order to determine the target car's speed). Gov't Br. 2.[2] Based on this pacing technique, police indicated that the Infiniti was traveling at 73 miles per hour in a 55 miles per hour zone. Id. Dash camera footage also shows the Infiniti changing lanes at a high rate of speed. Gov't Br. 6. Defendant, in an affidavit submitted in support of this motion, states the following with respect to the vehicle's speed:

> 6. Your Affiant [Defendant] further states that the Grey Infinity [sic] in which he was a passenger was traveling at the same rate of speed as the rest of the traffic on Westbound on the Dan Ryan Expressway.

---

continued the matter several times since in an effort to allow Defendant and/or the private investigator to locate House but at a status on October 25, 2019 denied a request to continue delaying the case due to the repeated failure to find House.

[2] The Court accepts the Government's representations as to what the reports and dashcam footage contain. The Court presumes that these materials have been provided to defense counsel, as he has not objected to the Government's reliance on these materials or to specific assertions made by the Government about what these pieces of evidence show. Moreover, the Court notes that defense counsel issued a subpoena seeking various pieces of evidence from the Illinois State Police with a return date of May 2, 2019. See Dkt. 23. Despite issuing that subpoena, and presumably possessing discovery obtained in the normal course of the case from the Government, the only evidentiary basis defense counsel has submitted to support a motion to suppress is Defendant's own affidavit.

2

Affidavit of Def., ¶ 6. After pacing the vehicle at 73 miles per hour and observing it rapidly change lanes, Illinois State Trooper Vincent Martinez pulled the car over. Martinez approached the car on the passenger side and "immediately smelled the distinct odor of marijuana emanating from the vehicle." Gov't Br. 2. He then returned to his squad to run checks on the individuals in the vehicle. Shortly thereafter, as Martinez was performing routine traffic inquiries on the driver and occupants, additional Illinois State Police troopers arrived on the scene. Id.

At that point, Martinez asked the other troopers to get House (the driver) out of the car and bring him to Martinez's squad car. Id. Martinez informed House that he was giving him a warning, and asked him about where they were coming from and other similar questions. The following exchange then occurred:

> Trooper Martinez: Listen, we're part of a criminal interdiction team, okay, we're out here because of all the highway shootings and all that, you know, trying to get guns and drugs off the street. You got nothing illegal in that car, correct?
>
> Driver: No.
>
> Trooper Martinez: No guns, no drugs?
>
> Driver: No.
>
> Trooper Martinez: You guys smoking a little bit earlier?
>
> Driver: Yes.
>
> Trooper Martinez: Ok. 'cause I can smell it in the car . . .
>
> Driver: Yeah.
>
> Trooper Martinez: . . . a little bit. Alright? Not a big deal, alright? Not out here to, just a little bit in the car, I don't care. Alright? Like I said, we're not out here for, for grams. Alright? We're out here for pounds, alright? You got nothing to worry about here.

Gov't Br. 2-3. The two continued to talk until the following exchange then occurred between

3

Martinez and another trooper, Marcus Nettles:

> Trooper Martinez: Hey Marcus, they admitted smokin' in the car, they admitted to smokin' in their car. So I told them that we're not out here for that small shit. You know? So . . .
>
> Trooper Nettles: Yeah, you all got weed, just throw it out.
>
> Driver: Okay.
>
> Trooper Nettles: You all got weed in the car or no?
>
> Driver: Yeah, you want me to pull it out of there?

Id. at 3. Martinez then stated that the troopers would "check it [out]." Id. The troopers removed Defendant and the other passenger from the car. Id. Martinez then searched the car and reported that he found a loaded Jimenez Arm .380 caliber handgun in the glove compartment. Id. The pistol was loaded with five rounds in the magazine and one in the chamber. Id. The pistol was in a black leather case containing an additional sixteen rounds. Id.

Martinez returned and asked who owned the gun. Id. No one admitted to owning the handgun. Id. The troopers then handcuffed the men and searched them, finding a plastic bag full of ammunition (30 .45 caliber rounds, one 9 mm round, and one .22 caliber round) in Defendant's pocket. The troopers then returned to the automobile and continued the search, finding marijuana in the front passenger door compartment. Id. A search of the trunk yielded three large target sheets from a gun range, with bullet holes in them, and a Taurus PT845 45 caliber pistol inside a red backpack. Id. at 3-4.

At the conclusion of the stop, Gist and another passenger were turned over to the Chicago Police Department for weapons violations. Id. at 3. House, the driver, was cited for speeding and cannabis and warned for failure to wear a seatbelt.[3] Id.

---

[3] The Court notes that arrest for failure to wear a seatbelt is not a violation of the Fourth Amendment. Atwater v. Lago Vista, 532 U.S. 318 (2001),

4

Defendant's affidavit briefly addresses the events that took place after the vehicle was stopped. Specifically, Defendant submits that:

> 7. Your affiant further states that when the Trooper who stopped the Grey Infinit[i] first approached the vehicle he did not mention that he smelled the odor of burnt marijuana to the occupants of the Grey Infinit[i].
> 8. Your affiant further states that none of the occupants of the above-described vehicle had smoked or burned marijuana in the vehicle during the trip.

Affidavit of Def., ¶¶ 7, 8. Defendant makes no other factual assertions about the vehicle being pulled over or about what happened after the stop in his affidavit aside from those quoted above throughout this section of the opinion.

## II. Discussion

### A. No Hearing Is Necessary to Decide the Present Motion

Evidentiary hearings on motions to suppress "are not granted as a matter of course but are held only when the defendant alleges sufficient facts which if proven would justify relief." United States v. Villegas, 388 F.3d 317, 324 (7th Cir. 2004) (citing United States v. Coleman, 149 F.3d 674, 677 (7th Cir. 1998). A defendant who requests a suppression hearing bears the burden of showing that there are disputed issues of material fact. United States v. Juarez, 454 F.3d 717, 719-20 (7th Cir. 2006); United States v. Randle, 966 F.2d 1209, 1212 (7th Cir. 1992). "Furthermore, to justify a hearing, the facts presented in the motion must be definite, specific, detailed, and nonconjectural." United States v. Sims, 808 F. Supp. 596, 605 (N.D. Ill. 1992) (citing United States v. Rollins, 862 F.2d 1282, 1291 (7th Cir.1988), cert. denied, 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989).

Defendant has provided definite, specific, detailed, and nonconjectural facts in his affidavit. In the motion, defense counsel has also raised conjectural, conclusory arguments that

go beyond the scope of what Defendant has attested to in his affidavit. Those conclusory statements are unsupported by what Defendant has sworn to and are not sufficiently definite, specific, and nonconjectural to create an issue of material fact in this case.

For example, defense counsel, in his motion, writes:

> 12. At the above time and location, and contrary to Trooper Martinez's stated purpose for the traffic stop, the above described motor vehicle was not speeding, now [sic] weaving between lanes of traffic, not driving in an otherwise erratic or unsafe manner, was properly registered, and contained valid license plates. In short, prior to the initiating the traffic stop, Trooper Martinez did not observe any traffic or criminal offenses by any individual in the Infinit[i].

Def. Mot. to Suppress, ¶ 12. This argument is conclusory, lacks any detail explaining how Defendant allegedly knew the vehicle was not violating any traffic laws, and, notably, is not supported by the facts alleged in Defendant's affidavit.

Similarly, defense counsel attributes motives to the police officers in this case without providing any supporting facts or details that would justify attributing such nefarious motives to the officers.

> 16. After the arrival of his back-up, Trooper Martinez implemented a plan to extend the nature of the traffic stop in an attempt to search the occupants and/or the vehicle.
>
> 17. After the arrival of his back-up, Trooper Martinez returned to the driver's side door of the Infiniti, and explained to the driver of the automobile (Mr. House) that he was only issuing a written warning for Speeding, but that the printer in his squad car was not working and it would take a few minutes longer to write out the warning. The above statement was false and designed to extend the duration and scope of the traffic stop in that, upon information and belief, the printer in Trooper Martinez's squad car was operational.

Def. Mot. to Suppress, ¶ 16, 17. Again, defense counsel provides no specific, nonconjectural fact that could arguably supply a basis from which to draw an inference that Martinez concocted a plan to extend the stop or that a printer in Martinez's car was actually operational.

In total, the only nonconjectural facts and specific details that defense counsel does provide in relation to the actions taken leading up to and during the stop (which are introduced through his affidavit) are: first, that the vehicle was traveling at the same speed as the other vehicles on the Dan Ryan at the time the car was pulled over; second, that Martinez did not mention the smell of marijuana when he "first approached" the vehicle; and third, that the occupants had not smoked or burned marijuana in the vehicle during the trip. Id. at ¶¶ 6-8.

These facts, which the Court will accept as true for purposes of ruling on this motion, do not contradict the officers' version of events. First, the fact that a vehicle was traveling at the same rate of speed as other vehicles on a highway does not mean that the vehicle was not speeding, as all vehicles on the highway could have been (or likely were, given this occurred on the Dan Ryan) speeding. Moreover, the officer noted that he paced House's car at 73 miles per hour (in a 55 zone) and observed it rapidly changing lanes. Because Defendant's only specific, nonconjectural fact (that the car was traveling at the same rate of speed as other cars on the Dan Ryan at that time) does not necessarily contradict the Government's version of events, no evidentiary hearing is required on this issue.[4]

Defendant also introduces specific facts related to marijuana—that the officer did not mention marijuana as he first approached the car and that the vehicle's occupants had not smoked any marijuana "in the vehicle during the trip." Affidavit of Def., ¶¶ 7, 8. First, with respect to

---

[4] Although defense counsel argues that the Government has conceded that an evidentiary hearing is necessary to determine the present motion, the Court disagrees. The Government responded to Defendant's motion on May 28, 2019, which was roughly two months before Defendant filed an affidavit providing the evidentiary basis from which Defendant seeks to suppress. Upon review of the affidavit, however, it is clear to the Court that the only nonconjectural, specific, and detailed assertions made by Defendant do not actually contradict the Government's representations as to the Officers' reports and the dash camera footage of the incident. Moreover, the Court does not broadly read the Government's argument on the point as a concession that a material issue of fact exists (particularly in light of the factual assertions that Defendant did eventually submit) and, even if the Government did make such a concession (which it would have made before seeing Defendant's affidavit), the Court is not bound by such a concession.

7

what Martinez may or may not have said when he first approached the vehicle, it is irrelevant to the legality of the length of the stop whether he announced to the vehicle's occupants his suspicion with respect to marijuana when he first approached the vehicle. Nothing would require the officer to make his suspicions immediately clear to the vehicle's occupants.

Second, with respect to Defendant's claim that the occupants had not smoked marijuana in the car during the trip, it is possible to smell marijuana regardless of whether or not it had been smoked in the car on that trip. For example, it may have smelled simply by virtue of existing in the car. In other words, unburnt marijuana has a smell; a smell does not spring forth for the first time once it is lit with a flame. In this sense, Defendant's affidavit does not necessarily contradict the Government's version of events.

As such, the only specific, nonconjectural facts that defense counsel raises (which come in the form of Defendant's affidavit) do not give rise to disputes of material fact. Defendant's sworn statements do not contradict the Government's representations as to how the stop proceeded. As such, Defendant has not met his burden to show that there are disputed issues of material fact relevant to the instant motion. The Court will thus proceed to the merits of Defendant's arguments.

### B. The Officers Have Sufficiently Justified the Initial Traffic Stop

Defendant first argues that Martinez did not have legal grounds to start the traffic stop of the Infiniti because no traffic laws were being violated. If the stop was unlawful, then the Court should suppress all evidence found as a result as fruit of the poisonous tree. The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Whenever police stop a vehicle, the stop must meet the Fourth Amendment's reasonableness requirement. Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). If a

search or seizure violates the Fourth Amendment, a court will generally exclude resulting evidence. United States v. Wilbourn, 799 F.3d 900, 910 (7th Cir. 2015).

The decision to stop an automobile is reasonable where an officer has an articulable suspicion that a crime is about to or has been committed, United States v. McDonald, 453 F.3d 958, 960 (7th Cir. 2006), or probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810 (1996); United States v. Lewis, 920 F.3d 483, 489 (7th Cir. 2019). Probable cause exists when the circumstances confronting the police officer support the reasonable belief that a driver has committed even a minor traffic offense. United States v. Muriel, 418 F.3d 720, 724 (7th Cir. 2005), see also United States v. Shields, 789 F.3d 733, 745 (7th Cir. 2015). Probable cause is an objective standard, based on the totality of the circumstances. Lewis, 920 F.3d at 489. If an officer reasonably thinks he sees a driver who committed a traffic violation, that is sufficient to pull him over without offending the Constitution. Id.

In the present case, the Government represents that the dash camera video and the police reports reflect probable cause for the initial traffic stop. Specifically, Martinez positioned his car behind the Infiniti and found it to be traveling at 73 miles per hour in a 55 miles per hour zone. Moreover, Martinez reported having observed the vehicle changing lanes at a high rate of speed. Either of these grounds independently would be sufficient to justify a traffic stop without offending the Fourth Amendment. Muriel, 418 F.3d at 724. Moreover, as discussed above, Defendant has provided no evidence whatsoever to contradict the Government's recounting of events. Defendant's assertion that House was driving at the same rate of speed as the rest of the vehicles on the Dan Ryan does not contradict the officer's assertion that the vehicle was speeding and recklessly changing lanes. As such, the Court holds that the initial traffic stop was supported by probable cause and thus was proper.

### C. The Traffic Stop Was Not Illegally Prolonged

A traffic stop can violate the Fourth Amendment if "it is prolonged beyond the time reasonably required to complete" the mission of the traffic stop. Illinois v. Caballes, 543 U.S. 405, 407-08, 125 S. Ct. 834, 837, 160 L. Ed. 2d 842 (2005). As Rodriguez v. United States, 135 S. Ct. 1609, 1611, 191 L. Ed. 2d 492 (2015) instructs:

> A routine traffic stop is more like a brief stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, than an arrest, see, e.g., Arizona v. Johnson, 555 U.S. 323, 330, 129 S.Ct. 781, 172 L.Ed.2d 694. Its tolerable duration is determined by the seizure's "mission," which is to address the traffic violation that warranted the stop, *Illinois v. Caballes,* 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 and attend to related safety concerns. Authority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.

Importantly here, "[a] traffic stop does not become unreasonable merely because the officer asks questions unrelated to the initial purpose for the stop, provided that those questions do not unreasonably extend the amount of time that the subject is delayed." United States v. Martin, 422 F.3d 597, 601-02 (7th Cir. 2005). "Information lawfully obtained during [the] period [necessary to complete the mission of the traffic stop] may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable investigation." Id.

In the present case, there was no unreasonable delay. Within approximately ten minutes of the traffic stop, while Martinez was issuing a warning to House, Martinez learned that there was marijuana in the car, giving him probable cause to search the vehicle. Specifically, when Martinez perceived the odor of marijuana emanating from the passenger side window, this gave rise to probable cause to believe that there was marijuana in the vehicle and that the driver may have been operating the vehicle under the influence. Moreover, House admitted that the occupants in the vehicle had been smoking "earlier[.]" Even assuming that the occupants had not smoked

marijuana in the car during the trip in question (as Defendant attests to in his affidavit), House's admission as to having smoked earlier in the day similarly gave rise to probable cause that House was driving under the influence. House's later admission that there was marijuana in the car likewise gave rise to probable cause. Because of these two admissions, the officers had probable cause to search for evidence of the crime or contraband. "Where law enforcement agents have probable cause to search a vehicle, they may search all areas in the vehicle in which contraband or evidence of criminal activity might be found, including closed containers, packages, compartments, and trunks." United States v. Zahursky, 580 F.3d 515, 523 (7th Cir. 2009)

As noted above, following House's admissions, the officers searched the car for marijuana, and in the process they discovered not only marijuana, but also guns and the ammunition that Gist is charged with possessing in the instant case.

### III. Conclusion

In conclusion, the Defendant has not carried his burden of providing the Court with specific, nonconjectural facts giving rise to a dispute of material fact. The representations made by the Government as to the actions observed and taken by the officers, particularly in light of the fact that defense counsel has not directly contradicted the officers in any direct, specific way, are sufficient to show that Defendant's Fourth Amendment rights were not violated by the initial stop or the later search, which uncovered the marijuana and contraband Defendant is currently charged with possessing. As such, the motion to quash arrest or suppress is denied.

IT IS SO ORDERED.

ENTER: *[signature]*
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 5, 2019